IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| LARRY GREEN and EDRIS GREEN, | § | Bankruptcy Case No. 12-38016 (13) |
| Debtors. | § | Adversary Case No. 18-3351 |
| ------------------------------------------ | § | |
| | § | |
| LARRY GREEN and EDRIS GREEN, | § | **CIVIL ACTION NO. H-19-2690** |
| Plaintiffs/Appellees, | § | |
| | § | |
| v. | § | |
| | § | |
| OCWEN LOAN SERVICING, LLC, | § | |
| Defendant/Appellant. | § | |

## **MEMORANDUM AND ORDER**

This case is before the Court on the Motion for Leave to File Interlocutory Appeal ("Motion") [Doc. # 2] filed by Ocwen Loan Servicing, LLC ("Ocwen"), to which Debtors Larry Green and Edris Green filed a Response [Doc. # 7], and Ocwen filed a Reply [Doc. # 8].[1] Having reviewed the record and the governing legal authorities, the Court **denies** the Motion.

## **I.     BACKGROUND**

On March 26, 2013, United States Bankruptcy Judge Marvin Isgur entered an Order [Doc. # 67 in BR Case 12-38016] confirming the Chapter 13 Plan proposed by

---

[1]     Also pending is Ocwen's Motion for Stay Pending Appeal [Doc. # 4]. Because the Court denies leave for the interlocutory appeal, the Motion for Stay Pending Appeal is **denied as moot**.

Debtors Larry and Edris Green. On December 27, 2017, Judge Isgur found that Debtors had completed all payments to Ocwen required under the confirmed Chapter 13 Plan as of October 31, 2017. *See* Order Deeming the Mortgage Current and Directing Debtor(s) to Resume Payments [Doc. # 182 in BR Case 12-38016]. Judge Isgur ordered Debtors to begin making direct payments to Ocwen in the amount of $790.66 beginning November 1, 2017. *See id.* Debtors received an Order of Discharge [Doc. # 186 in BR Case 12-38016] under 11 U.S.C. § 1328(a) on January 22, 2018.

On November 25, 2018, the Greens filed this Adversary Proceeding. The Greens allege that they made the required payments to Ocwen through July 6, 2018, after which Ocwen refused to accept payments and initiated foreclosure proceedings. *See* Complaint [Doc. # 1 in Adv. Case No. 18-3351], ¶ 18. The Greens allege that Ocwen has continued to attempt collection of amounts that were cured in the Chapter 13 Plan and has improperly initiated foreclosure proceedings. *See id.*, ¶ 14.

In the Adversary Proceeding, the Greens requested a copy of all transcripts ("CFPB Transcripts") of proceedings before the Consumer Financial Protection Bureau ("CFPB") that were referenced and quoted in a complaint filed by the CFPB against Ocwen in the Southern District of Florida. *See* Joint Discovery/Case Management Plan [Doc. # 9 in Adv. Case No. 18-3351], p. 5. The CFPB complaint

was filed in Florida on April 20, 2017, relating to a time period between 2014 and 2016. Ocwen opposed disclosure of the CFPB Transcripts, and Judge Isgur ordered briefing on the issue.

On February 27, 2019, Judge Isgur held that the CFPB Transcripts were not "Confidential Information" that was "restricted from turnover" under the applicable federal regulations because the CFPB had used the information in the complaint in the Southern District of Florida,[2] and because the applicable regulations do not preclude Ocwen from disclosing the CFPB Transcripts pursuant to a Court order and with appropriate protective measures.[3] *See* Order Overruling Objections to Turnover of Transcripts ("February Order") [Doc. # 32 in Adv. Case No. 18-3351]. Judge Isgur provided an opportunity for the CFPB to file any objection to the turnover of the

---

[2] The CFPB regulations define "Confidential information" to mean:

> confidential consumer complaint information, confidential investigative information, and confidential supervisory information, as well as any other CFPB information that may be exempt from disclosure under the Freedom of Information Act pursuant to 5 U.S.C. 552(b). Confidential information ***does not include*** information contained in records that have been made publicly available by the CFPB or information that has otherwise been publicly disclosed by an employee with the authority to do so.

12 C.F.R. § 1070.2(f) (emphasis added).

[3] The CFPB regulations provide that nothing in those regulations shall prevent any person "to whom the information is made available under this subpart from complying with a legally valid and enforceable order of a court of competent jurisdiction compelling production of the CFPB's confidential information . . .." 12 C.F.R. § 1070.47(a)(4)

CFPB Transcripts. *See id.* Judge Isgur also imposed restrictions on the Greens' use of the information in the CFPB Transcripts *if* they ultimately received copies, ordering that they "may not quote from or refer to information contained solely in the transcripts except (i) in a sealed motion; or (ii) as authorized in advance by order of this Court." *See id.* There is nothing in the record suggesting the CFPB filed an objection to the turnover of the CFPB Transcripts.

Ocwen filed an Objection to Production of CFPB Transcripts ("Objection") [Doc. # 35 in Adv. Case No. 18-3351]. In the Objection, Ocwen proposed additional "protective provisions" should the CFPB Transcripts be disclosed to the Greens. *See id.*, ¶ 27.

On April 22, 2019, Judge Isgur issued an Order to Produce Transcripts ("April Order") [Doc. # 39 in Adv. Case No. 18-3351]. Judge Isgur ordered Ocwen to produce the CFPB Transcripts only to the Greens' attorney, who was ordered to maintain them in confidence and was precluded from making any disclosures, in pleadings or otherwise, of the information in the CFPB Transcripts. *See* April Order, ¶¶ 1-2.

On July 2, 2019, the Bankruptcy Court conducted a hearing on Ocwen's request for a broad, general protective order for the CFPB Transcripts. On July 3, 2019,

Judge Isgur issued an Order ("July Order") [Doc. # 52 in Adv. Case No. 18-3351], denying Ocwen's request for a general protective order, stating however:

> If Ocwen believes [certain information concerning identified borrowers or proprietary operations processes] was disclosed in the CFPB Transcripts, it must identify the appropriate volume, page, and line numbers to the Court by July 19, 2019. The Court will then conduct an *in camera* review of the identified information to determine whether limited portions of the Transcripts should be protected.

July Order, p. 2.

On July 17, 2019, Ocwen filed a Notice of Appeal [Doc. # 55 in Adv. Case No. 18-3351] and the pending Motion for Leave to File Interlocutory Appeal. On July 19, 2019, Ocwen filed its Notice of Designation of Portions of Material in CFPB Transcripts Pursuant to Order [Doc. # 57 in Adv. Case No. 18-3351]. Consideration of Ocwen's designations remains before Judge Isgur.[4]

By Stay Order [Doc. # 63 in Adv. Case No. 18-3351], entered August 6, 2019, Judge Isgur stayed the July Order, except for the paragraph giving Ocwen an opportunity to designate portions of the CFPB Transcripts for *in camera* review, until August 31, 2019, "or such longer date as is imposed by the United States District Court. By Order [Doc. # 5] entered August 9, 2019, this Court extended the Stay Order until the Motion for Stay Pending Appeal is decided.

---

[4] By Order [Doc. # 63 in Adv. Case No. 18-3351] entered August 6, 2019, Judge Isgur directed the Greens to file any response to Ocwen's designations by August 31, 2019.

In the pending Motion, Ocwen argues that an interlocutory appeal should be authorized pursuant to 28 U.S.C. § 158(a)(3) or, alternatively, pursuant to the collateral order doctrine. The Motion has been fully briefed and is now ripe for decision.

## II. APPEAL PURSUANT TO 28 U.S.C. § 158(a)(3)

Appeals of interlocutory bankruptcy court orders are allowed "with leave of the [district] court." *See* 28 U.S.C. § 158(a)(3). District courts in the Fifth Circuit apply the factors listed under 28 U.S.C. § 1292(b) to determine whether to grant leave to file an interlocutory appeal. *See, e.g., In re Royce Homes LP*, 466 B.R. 81, 94 (S.D. Tex. 2012). The factors are: (1) there is a controlling issue of law involved; (2) the question is one where there is substantial ground for difference of opinion; and (3) an immediate appeal will "materially advance the ultimate termination of the litigation." *Nguyen v. Am. Commercial Lines L.L.C.*, 805 F.3d 134, 138 (5th Cir. 2015).

When deciding whether an interlocutory appeal would materially advance the litigation, the Court examines whether an immediate appeal would "(1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *Coates v. Brazoria County, Tex.*, 919 F. Supp. 2d 863, 867 (S.D. Tex. 2013); *Abecassis v. Wyatt*, 2014 WL 5483724, *5 (S.D. Tex. Oct. 29, 2014).

In this case, Ocwen has failed to demonstrate that an immediate appeal from Judge Isgur's orders regarding the CFPB Transcripts will materially advance the ultimate termination of the underlying adversary proceeding. Ocwen argues that an immediate appeal will make discovery easier and less costly. *See* Motion, p. 12. Ocwen's argument is based on its belief that the Greens and their attorney will fail to comply with Judge Isgur's restrictions regarding the use of the CFPB Transcripts and the information therein. There is no showing, however, that either the Greens or their attorney are inclined to violate Judge Isgur's orders regarding prohibited uses of the information in the CFPB Transcripts. As a result, Ocwen has failed to show that the requested interlocutory appeal will materially advance the ultimate resolution of the adversary proceeding. The Motion, to the extent it is based on § 158(a)(3), is denied.

### III. APPEAL PURSUANT TO COLLATERAL ORDER DOCTRINE

Ocwen also seeks leave to appeal pursuant to the collateral order doctrine, which originated with the Supreme Court's decision in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). The Supreme Court has repeatedly stressed that the collateral order doctrine "must never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (citing *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994); *Will v. Hallock*,

546 U.S. 345, 350 (2006) ("emphasizing [the collateral order doctrine's] modest scope")). This admonition recognizes that allowing piecemeal appeals before final judgment "undermines efficient judicial administration." *Id*. "The justification for immediate appeal must therefore be sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes." *Id.* at 107.

To support an appeal under the collateral order doctrine, the order "must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." *Netsphere, Inc. v. Baron*, 799 F.3d 327, 334-35 (5th Cir. 2015). In determining whether to apply the collateral order doctrine in a particular case, the Court does not "engage in an individualized jurisdictional inquiry." *Mohawk*, 558 U.S. at 107 (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 473 (1978)). Instead, the Court's focus "is on the entire category to which a claim belongs." *Id*. (citing *Digital Equipment*, 511 U.S. at 868); *see also Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 173 (5th Cir. 2009) ("instead of making these [collateral order doctrine] decisions on a case-by-case basis, we make them on a type-of-order-by-type-of-order basis"). "As long as the class of claims, taken as a whole, can be adequately vindicated by other means, the chance that the litigation at hand might be speeded, or a particular injustic[e] averted, does not

provide a basis for jurisdiction" under the collateral order doctrine. *Mohawk*, 558 U.S. at 107 (internal quotations and citation omitted).

The "class of collaterally appealable orders must remain narrow and selective in its membership." *Id.* at 113. Pretrial discovery orders are generally not within the small class of orders immediately reviewable under the collateral order doctrine. *See id.* at 108; *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 449 (5th Cir. 2019).

Initially, there has been no conclusive determination of the CFPB Transcripts disclosure issue. Judge Isgur has been dealing with the issue for months, and has entered three separate orders addressing whether, to what extent, and under what conditions the CFPB Transcripts must be turned over to Plaintiffs' counsel. In the July Order, Judge Isgur gave Ocwen an opportunity to designate portions of the CFPB Transcripts to be protected from disclosure. *See* July Order, p. 2. Ocwen has filed its designations, and whether the designated portions of the CFPB Transcripts should be protected remains before Judge Isgur for decision. As a result, the challenged orders do not satisfy the first requirement for an immediate appeal under the collateral order doctrine.

Additionally, regarding the non-reviewability requirement, the Supreme Court's decision in *Mohawk* is analogous and persuasive. In *Mohawk*, the Supreme Court held

that disclosure orders that allegedly violate the attorney-client privilege are not immediately reviewable under the collateral order doctrine. *See Mohawk*, 558 U.S. at 108. In that case, as here, the party seeking to appeal argued that disclosure of the subject information would have a chilling effect on the willingness of individuals to speak freely and openly – with the individual's attorney in *Mohawk* and with government agency investigators in this case. *See id.*; Ocwen's Objection to Production of CFPB Transcripts [Doc. # 35 in Adv. Case No. 18-3351], p. 12. The Supreme Court in *Mohawk*, while recognizing the importance of the attorney-client privilege in encouraging full and frank disclosures, held that the proper focus is whether "deferring review until final judgment so imperils the interest as to justify the cost of allowing immediate appeal of the entire class of relevant orders." *See Mohawk*, 558 U.S. at 108. The Supreme Court noted that litigants are routinely forced to wait until final judgment "to vindicate valuable rights, including rights central to our adversarial system." *See id.* at 109. The Supreme Court held that "Appellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings." *Id*. Similarly, in this case, the Court on appeal from a final judgment can review Judge Isgur's decision regarding the discoverability of the CFPB Transcripts and, if that decision was wrong, can vacate any judgment against Ocwen that is based on the information in the transcripts.

Ocwen argues that Judge Isgur's orders are effectively unreviewable on appeal because, before final judgment is entered, "Plaintiffs likely will have wrongfully disseminated the Transcripts to an extent that cannot be undone." *See* Motion, p. 14. The Court anticipates that Judge Isgur will impose adequate safeguards to protect any confidential information in the CFPB Transcripts, and this Court expects the Greens and their counsel to comply fully with Judge Isgur's orders. Ocwen's subjective fears that the Greens or their counsel will violate Judge Isgur's orders does not render those orders effectively unreviewable, and it is not a basis for an immediate appeal under the collateral order doctrine.

Ocwen cites cases in which the United States Court of Appeals for the District of Columbia has applied the collateral order doctrine to permit an immediate appeal. The Court finds those cases, and a recent Fifth Circuit case, distinguishable. In *Al Odah v. United States*, the D.C. Circuit permitted an immediate appeal of a district court order requiring disclosure of unredacted classified material to enemy combatants held at Guantanamo Bay, Cuba, where the disclosure was ordered without adequate findings and over the Government's objection. *See Al Odah v. United States*, 559 F.3d 539, 543-44 (2009). In this case, the information in the CFPB Transcripts is not classified; indeed, it is possibly no longer "confidential information" as defined by 12

C.F.R. § 1070.2(f). Additionally, there is no indication that CFPB objects to the disclosure as described in Judge Isgur's orders.

In *United States v. Rayburn House Office Bldg.*, the D.C. Circuit permitted an immediate appeal from the denial of a motion seeking return of materials seized from the office of a sitting Member of Congress in violation of the Congressman's rights under the Speech and Debate Clause. *See United States v. Rayburn House Office Bldg.*, 497 F.3d 654, 659 (D.C. Cir. 2007). In that case, the D.C. Circuit found the fundamental guarantees of the Speech and Debate Clause support an immediate appeal under the collateral order doctrine of the class of orders allegedly violating that Clause. *See id.* The federal regulations applicable to disclosure of CFPB confidential information do not involve similar fundamental guarantees that impact the separation of powers within the United States government.

The Fifth Circuit recently applied the collateral order doctrine to permit an immediate appeal by a nonparty from an order allowing its confidential business documents to be filed unsealed. *See Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 448 (5th Cir. 2019). In that case, the Fifth Circuit held that sealing and unsealing orders are a class of orders reviewable under the collateral order doctrine. *See id.* In that case, however, the order allowed a nonparty's confidential

information to be filed unsealed as part of the public record. Judge Isgur has not issued such an order in this case.

In conclusion, the CFPB Transcript Orders issued by Judge Isgur have not completely and conclusively decided the extent of disclosure or the protective safeguards under which some or all of the CFPB Transcripts will be disclosed to the Greens and their counsel. Additionally, Judge Isgur's orders are not within that small category of orders that resolve important questions and that are effectively unreviewable on appeal from a final judgment. Consequently, the collateral order doctrine does not apply to permit an immediate appeal.

## IV. CONCLUSION AND ORDER

Ocwen has failed to demonstrate that an immediate appeal from the CFPB Transcripts Orders would materially advance the ultimate termination of the underlying adversary proceeding. As a result, an interlocutory appeal pursuant to § 158(a)(3) is not warranted.

The CFPB Transcripts Orders do not conclusively determine the extent to which the Transcripts are to be turned over to the Greens' attorney or the conditions under which disclosure is required. Additionally, the CFPB Transcripts Orders do not involve important questions that are effectively unreviewable on appeal after final judgment. Therefore, the collateral order doctrine is inapplicable, and it is hereby

**ORDERED** that the Motion for Leave to File Interlocutory Appeal [Doc. # 2] is **DENIED**. It is further

**ORDERED** that the Motion for Stay Pending Appeal [Doc. # 4] is **DENIED AS MOOT**. It is further

**ORDERED** that this civil action is **TERMINATED**.

SIGNED at Houston, Texas, this **26th** day of **August, 2019**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE